Case number 17-2127 Frederick Peoples v. FCA US LLC Oral argument, 15 minutes per side. Mr. Levy for the appellant. Good morning. Robert Levy for Frederick Peoples. Good morning to all of you. Frederick's Peoples bucked the system here. There was supposed to be rotation in this factory where people would not get repetitive motion injuries by alternating jobs. But his supervisors, his supervisor at least, gave all the cushy jobs to his friends. And that did not include Mr. Peoples. But he demanded rotation. Chrysler agreed with him and they instituted rotation, but that didn't end his problems. Because the men he was working with harassed him because of it, in two instances assaulted him. And his supervisors looked the other way, didn't sanction these men who harassed him at all. And in fact, following the institution of the rotation, continued to tell Mr. Peoples that he was not injured, he didn't have a disability, he was faking, and he better not ask to rotate to their jobs. And I want to ask you, with respect to the unsworn letters which were excluded by the court as to Mr. Peoples, is it your contention that those letters set forth Mr. Peoples' complaints as evidence that he put the company on notice about the harassment? Was that the issue? Because I know that the letters were not admitted as to him, but were admitted somewhere else. And I want to know how those letters affect the court's ultimate disposition, whether that's what you say would have created the genuine issue of fact on at least one of the claims. Mr. Peoples' letters tell his side of the story. They tell his side of the story about how he was harassed and yet he was blamed for others harassing him. Are you saying then that he was attempting to use those letters to show that the company was put on notice as to what was going on with him? That's one way. But you're also using the letters, as I understand it, for the truth of his version of, as you said, his side of the story. And there's two bases, I think. But, I mean, as to that point, isn't it a classic hearsay problem? Well, I think that the other side – His side of the story would be the truth of the matter. They were admitted as substantive evidence under the party admission exception to the hearsay rule by FCA. And my position is if they're substantive evidence, they're substantive evidence. She's opened the door to that being substantive evidence. If it was a jury and they were admitted as exhibits, could you tell the jury, you can only consider this for the defendant's case and not for the plaintiff's case? They're there to read. You can't do that, but you can say they're admitted for a limited purpose as to both parties. That happens all the time. Well, I think that they also were admissible under the recorded recollection exception. Perhaps equally importantly, I can't figure out why that dispute makes a darn bit of difference here. The questions, at least with respect to this harassment that you're talking about, that happened back in 2011. And he gets fired at the end of 2014, right? Right. Three years ago, almost four years later. The judge was correct. What happened in 2011 and 2012 is background. Why does this case come out any differently than if the letters had come in, than if the letters had been utilized for the purpose for which you won? I think on the claim of discrimination on the basis of disability and retaliation, the letters don't make any difference because the judge recognized that on both of those claims, in both federal and state law, that my client had stated a prima facie case. You don't have to explain why they're relevant for claims for which they don't matter. It must be some claim you think they do matter. So which one is that? Hostile work environment. The judge said that the 2011 and 2012 incidents could be background, but he felt they were background to nothing at all. In other words, that there was no hostile work environment in 2014. I'm trying to figure out why the letters changed that conclusion the judge made. Because they established the factual background for what happened in 2011 and 2012. There wasn't any dispute about what that background was, was there? Well, there was a dispute about the fact that Chrysler blamed my client for the other people who were hostile towards him, and he denies that he was the one responsible. Well, my point is the incidents happened. Yes, they happened. Who's to blame for them? They were three years ago. The judge said they can be background, but they're too old, basically. So what difference does it make? It just seems like this is kind of, frankly, a silly place to be taking your stand on these letters. Maybe what Judge McKeek is suggesting is we should talk about the five-day letter and whether your client is in favor of that. Let's do that. That's where I was headed, Your Honor. That might be a good place to go. That's where I was headed, because I don't think we even get to the issue of whether the defendant's alleged legitimate business reason for discharging my client was mere pretext. We don't even get there. Because there was no legitimate business reason according to that five-day letter. According to the five-day letter, which was sent out, I think, on the 24th of October 2014, by October 31st, my client was told to either report to HR unless on or before that date he delivers to HR documents substantiating the reason for his absence. So if he had not even appeared at the factory but submitted some document in writing, his doctor's note stating that he had PTSD and was off from work until February, if he had just mailed it in, that would have satisfied him. Let me tell you what I don't understand about that claim, and it may reflect a misunderstanding of what actually happened here. He gets this letter. Let's assume that he either complied with the requirements stated on the face of the letter before he went into the plant, or let's assume that showing up with the material complied with the terms of the letter. My understanding is what happened is they told your client to sit there, to stay there until a doctor could come in and talk to him about what was in the letter, and that your client said, your client didn't say anything, I don't think, he just decided he wasn't going to wait around for the doctor to come, so he left. Now is that all factually true? It's factually true. Now he was being paid for all of this time, was he not? So it isn't as if he was there as a volunteer and there was no legitimate expectation that he would do what his supervisor said. No, he wasn't being paid for this time. He's not being paid? I thought he was on leave during all these times. Well, he was on excused leave, but it was unpaid. Oh, it's unpaid. Okay, all right. So he's on leave, they tell him that they want him to do something, and he doesn't do it. So what seems to happen here is that that is the basis upon which now Chrysler says that's why they fired the guy. And why does that not get us to pretext, and what does your guy do to overcome that being the reason why he was fired? Well, there was nothing in the letter about staying to be evaluated. It has to be satisfactory medical evaluation. That's not solely something that you're in charge of or your client's in charge of. No, it didn't say evaluation. My hypothetical is that your guy did what the letter said. He did. And when he was there, they asked him or told him to stay so that they could discuss the letter. That's what the satisfactory part deals with. And you said, yes, that's what really happened. So why can't he be fired for the reason that Chrysler has articulated? He shows up, he gives the letter, we assume it's satisfactory, but we want you to stay so the doctor can see you when he leaves. Why can't they fire him for that? The letter that he presented said that he was still suffering from post-traumatic stress syndrome. That was because of instances, a whole history, two or three years of harassment. So why would he stay in an environment where he was? Chrysler wants their doctor to talk to this guy about the letter. That seems imminently reasonable. Then why didn't they put it in the letter? They said that he would be terminated unless he complied with the letter. He complied with the letter. Where do you drive the obligation to put the fact that you may have to stay to talk to the doctor in the letter? That's like saying supervisors have to send people on the line a letter that says what they want them to do. I mean, people don't use letters that way. Well, that wasn't the basis. Your point, sir, from what I understand is, you're saying your client complied with the requirements of the letter. You were telling us initially that had he mailed the letter in, had it been delivered by the U.S. Postal Service, he would have complied because there was nothing that said you have to come in and be evaluated by the doctor. So your position is that this was a separate request by Chrysler that was not subsumed in the original letter and that we're looking at two events, not simply one. Is that what you're saying? Well, that's what I'm saying. I'm saying that he didn't even have to come in. But that does take you to satisfactory. Pardon? That does make the word satisfactory relevant. You seem to be saying he didn't have to come in. All he had to do was mail something in with a short little doctor's note. He's got PTSD and three months off. But I don't know how that gives content to the word satisfactory. Well, Chrysler has never stated that it was not satisfactory. Well, no, they stated what makes a lot of sense. We want him to see our doctor, right? But why should he have to do that when he didn't even have to come in? Well, you may be right, he didn't have to come in. He did have to satisfy them. And if he does it by letter, he's at real risk that he won't satisfy them. And if he comes in and leaves immediately when they say, we'd like someone else to look at you, it's pretty easy to say that's not complying. Well, the letter says, accordingly you are to report to the Plant Employment Office on or before October 31, 2014. Unless on or before this date the Plant Employment Office receives satisfactory evidence as to the reason for your absence. It would be an unusual use of the word received to indicate that he was going to have to be evaluated. When you receive, you're receiving something from the other person. You're not evaluating them. It seems like he'd have a really good argument if he'd sent it in and they said it was satisfactory. And then they fired him anyway. But that didn't happen. He didn't send it in, he brought it in. They asked him to then stay, presumably, to talk about what was in the letter. What's wrong with that? The man's suffering from post-traumatic stress syndrome. He's come back to the place that triggers that condition. And his doctor says, stay away from that place. So why would he stay there? Did he give a reason why he was leaving, either at the time or afterwards when he was fired? He says in his deposition, the doctors and the nurses were mean to me and were hostile towards me at that time. Did he give a reason at the time or at the time he received the letter saying he was fired? In other words, contemporaneously. Not talking about depositions down the road. Did he explain why he left? He never had an opportunity to explain why he left. Because the union, although they filed a grievance late, eventually never proceeded with it and just recently dismissed it. All right. Will you get your rebuttal? We'll hear from Chrysler. Thank you. Ms. Brower? Good morning. Debra Brower for FCA US LLC, which we can all refer to as Chrysler here. This is a disability discrimination case. And what Mr. Peep- What about the five-day letter? I mean, why might we not be able to say that he technically complied with it? I'm sorry? The five-day letter he reported, he did have an explanation. Presumably he thought it was satisfactory. Maybe it's not obvious from the letter who has to be satisfied. He doesn't want to stay around there. It's not a good place for him. So he technically thinks he complied with it. Well, he may think that he complied with it, but that determination is not his to make. FCA's five-day letter, which FCA sent and FCA wrote, and it's their standard letter, indicates that he has to provide satisfactory substantiation of his absence. Okay. So if he had, as counsel said, sent in his medical report by U.S. Mail and Chrysler, and timely, and Chrysler read that and found it was not satisfactory, would Chrysler have been able to have fired him on the spot, or would they then have been required to have some kind of conference, have him actually come in, do some kind of evaluation, and then fire him? Well, that's not what happened. Well, that's not what happened, but I'm- It did appear. So I'm speculating as to what Chrysler would have done, but it's likely that they would have done in writing what they did in a face-to-face meeting with him. They would have said, the doctor wants to see you. And if he had not come in to see the doctor- And that's the point. His absence wouldn't have been substantiated. Had he sent this in, they would have said, okay, the doctor needs to talk to you on such and such a date. Come in. But here, he delivered it, and they said, wait. He didn't wait. And they said- What they said is, the doctor wants to talk to you. He wants to determine whether your documentation is satisfactory to Chrysler. He didn't. So he was fired. And if they had sent a letter and he hadn't come in, he would have been fired. And I understand that. The point I'm making, and I think the point that counsel is getting to, is the notice. Mr. Peebles appeared that morning with the expectation that he'd be able to, in satisfaction of the written letter, to be able to bring his documentation and leave. He gets there. People say, wait, the doctor wants to talk to you, and he leaves. I don't think there's record evidence that Mr. Peebles' expectation was that he could immediately leave. The standard protocol, which he admitted and he'd gone through many times, is you report to HR, HR sends you to the plant medical office, and you do then what the plant doctor asks you to do. He had been through this process many times. So it's your position that the letter that we're talking about here indicated that he needed to come in, not just send something, but that he needed to physically report in person. The letter indicates that he has to report to plant employment, HR, or provide the documentation. He reported to plant HR. Plant HR said go to the they don't take the medical records or the doctor's notes. That goes to the plant medical office. There's a specific doctor for that plant, for every plant, but for that plant in question. He had done this many, many times before. He knew that he had to go, and he admitted at his deposition that he knew that he would have to go to the medical office. And he just decided he didn't want to wait. He was told the doctor needed to see him. Chrysler has the obligation to determine whether someone is fit to work or not. I mean, that is the standard protocol. And, again, Mr. Peoples admitted that, testified to that at his deposition. He knew that the plant medical office is the gatekeeper to whether people are fit or not fit to work. And he instead wanted to substitute his own judgment or his doctor's judgment. Okay, we're moving to the next thing. Would the admission of the employee medical record have been sufficient to create a material or genuine issue of fact in this case? Well, the medical record was admitted. It was a document in various pleadings. And it does show that Mr. Peoples came to the medical office. It shows that he submitted a note. It shows that he was asked to stay and that he left. So I don't think it changes anything. I think those facts are all undisputed in other parts of the record. Just as I don't think that the letters from 2011-2012 have changed anything. I mean, when I stepped up to the podium, I said that this was a disability case, a disability discrimination case, that he was fired because of his disability. And he not only has to show as a pretext to establish pretext that Chrysler's reason was not accurate factually or sufficient, but he also has to show that Chrysler made that decision because of his disability. And that's also true for his hostile work environment claim. It has to be because of his disability. And this record in this case is completely absent of such evidence. And Plaintiff's counsel even alluded to that when he first stepped up and talked about the rotation disputes. That's the background. That's what Mr. Peoples was complaining about, whether the collective bargaining agreement was followed or not. And that's what his coworkers were upset about. It's not about his disability. He has no accurate evidence that the decision-maker as to the termination, Brad Devine, ever said anything negative about his disability. Mr. Devine testified he didn't even know that Mr. Peoples had PTSD. There's no evidence that other workers, not disabled, who also failed to follow the five-day letter protocol, were not fired. He has no comparable outside of his protected class. He has no evidence that anyone made regarding his termination, the 2014 incidents, that anyone made any comments, took any actions that demonstrate disability animus on the part of FCA. And he has to prove both. It's not just the reason they fired me wasn't the real reason. It has to be that the real reason was because he was disabled. And he has no such evidence. And as I mentioned, that also is true for the hostile work environment claim. The hostile work environment claim, as asserted by plaintiff, consists of discrete acts, actionable on their own, a transfer. He didn't get a transfer to the facility he preferred. He got a written warning and he was terminated. Those are discrete acts which typically do not make their way into a hostile work environment claim. I believe that they are argued here as part of the hostile work environment claim in an effort to bring in the 2011 and 2012 incidents. Which, as I think the panel has already, at least Judge McKee already noted, were so distant in time, place, people, different supervisors, different coworkers, and they weren't even, those incidents, those letters were really not even about his disability. It was that rotational dispute. But I do believe that that's why there's a hostile work environment claim here to try to sort of bootstrap in those incidents into the 2014 incidents. I think we got your main points. All right. Very good. I never need to talk more if the court says it doesn't. So I think the district court was absolutely correct in its ultimate decisions, if perhaps incorrect on some of them around the edges, and plaintiff's claims should have been dismissed and should now be affirmed, that dismissal should be affirmed by this court. Thank you. Thank you, Ms. Brower. Mr. Levy, you have your rebuttal. My client had every right to believe that he was complying with the letter. If you look at the employee medical record, entries beginning July 18th, 2014, and ending October 7th, 2014, there are three instances where he brought in documentation of his continuing medical condition, and the last line on each one was employee dropped off paperwork and left. There's no indication he was evaluated. He brought in his documents. They were received, and he left. What I'm still hung up on, and so if you could address yourself to this, is that even assuming that there wasn't this custom at Chrysler, as your opponent says that there was about you show up at HR, then they send you to medical, and then you see a doctor, even assuming that that's not true, how do you get around the fact that apparently it's undisputed that they asked him to stay or to go see the doctor, and he left? Your whole case has to be either, well, that didn't happen, but it seems to me it did, or, well, they didn't have any right to make my guy stay, and he could just wander off and self-declare that the letter was satisfactory. Well, that isn't the basis that the trial court dismissed and found no pretext for the first thing. My client has PTSD. He has it from a whole series of years of incidents at this plant. His doctor tells him, you need to stay away from the plant for several months. He comes back to do that. He doesn't want to stay. The doctor's not there. This is the same doctor. Back in October, they changed the restrictions that people's doctors had suggested, according to restrictions opined by an IME that gave him, said he could do more than his own doctor could. He objected to the plant doctor, and the plant doctor said, I don't have any power to change this. So why would he see someone who has no power to change these changed restrictions that have caused him injury? He's already been told. So now you're saying that he was justified in leaving because he didn't like the doctor, because the doctor didn't do what he wanted him to do? No, I'm saying this is part of his PTSD. I'm saying that he says these restrictions are unfair back in October. He says, I want to have rotation. I want to have an evaluation. They tell him to go back to work. He gets injured. The doctor's not in. He goes to the ER. Then the doctor who wasn't in comes to the work site to do the evaluation when my client's not there, and the trial judge says, well, it's your client's fault he wasn't there. He wasn't there because he was injured. So this is the background. Twice in 2014. I'm still having trouble understanding this. Excuse me for interrupting you. So it was okay for him to leave when being asked to stay because, in his view, they had treated him unfairly in the past. Should I distill that from what you said? Let me explain something. For instance, soldiers in Afghanistan have witnessed their buddies being killed by children who are wired with bombs by the enemy. They can't stand to be around children when they come back here. The past becomes the present. That's what I'm saying, and that's what I'm saying in the hostile work environment. Thank you. I think we understand the point. Thanks to both of you for your briefs and arguments. The case will be submitted, and the clerk may call the last case.